## Merchants' National Ins. Co. v. William S. Dunbar and John A. Wade, Partners, for the use of, etc.

1. INSURANCE—*Prima Facie Case.*—Where the issues of fact substantially present the controlling questions in the case and the policy of insurance with proofs of loss is introduced by plaintiffs, a *prima facie* case is made.

2. SAME—*Failure to Observe Clause in Policy Requiring Keeping of*

*Books of Account, and Keeping Them in Fire-Proof Safe.*—A provision in a policy for the keeping of books of account and for the keeping of them in a fire-proof safe is a reasonable one, and the insured having contracted by his policy of insurance to observe it, it was such a provision as was necessary to be fulfilled by him, and the failure to do so, with an intent to defraud the insurance, would result in the forfeiture of his contract of insurance.

3. SAME—*What is Not a Breach of a Condition.*—The accidental omission to put a small paper bound book in the safe, containing a part of an invoice, whose total is carried to the ledger, and when the stock of goods insured had been seen only eighteen days before by the agent effecting an insurance, is not such a breach of a condition in an insurance policy as will defeat the insurance.

**Action on Policy of Insurance.**—Appeal from the Circuit Court of Jefferson County; the Hon. JOHN D. YOUNGBLOOD, Judge, presiding. Heard in this court at the February term, 1899. Affirmed. Opinion filed March 16, 1900.

**Statement.**—Appellant on the 6th of August, 1897, issued its policy of fire insurance for one year for $2,500, upon a stock of merchandise of appellees, Dunbar & Wade.

Eighteen days afterward the stock of goods was destroyed by fire.

The policy was assigned shortly after the fire to certain creditors of appellees, and this suit is brought for their use.

Another policy upon said stock of goods in the Phœnix Insurance Company was in force at the time of the fire. The Phœnix sent its adjuster, B. T. Wise, to examine into the circumstances of the loss, and he was requested by appellant to act for it, which he did. A printed paper, with blanks to be filled by statement of appellees, to serve as proofs of loss, was furnished by appellant. These blanks were filled in, and the paper thus filled was sworn to by appellees and was then returned, through B. T. Wise, the adjuster, to appellant. It contained a re-affirmation of certain conditions of the policy, with a declaration that appellees would not claim a waiver of conditions, and is as follows :

" In consideration of the furnishing of this blank and the filling out of the same by the adjuster, or any agent of the

said insurance company, they hereby agree that neither the action taken by said insurance company to investigate the amount of loss or damage, nor the acceptance of this statement by the said insurance company, or showing made as of date hereon, as above stated, shall be claimed to be any waiver of the provisions of this sworn statement, or of the conditions of the said policy which are hereby re-affirmed as conditions precedent to the payment of the loss; and, further, that there can be no waiver of the conditions of said policy, otherwise than in writing signed by a duly authorized agent of said insurance company."

The policy contains the following provisions :

"The assured under this policy agrees to keep a set of books showing a complete record of business transacted, including all purchases and sales, both for cash and for credit (cash sales need not be itemized except by daily totals), and agrees to take an itemized inventory of stock on hand at least once every year, and to keep such books and inventory securely locked at night in a fire-proof safe, and at all other times when the store described in this policy is not actually open for business, or in some secure place not exposed to a fire which may damage or destroy the building where said business is carried on; and, in case of loss, whether at the time of fire the store may be open for business or not, the assured agrees to produce such books and inventories, and in event of failure to produce the same, this policy shall be null and void, and no suit or action at law shall be maintained for any loss or claim."

"The assured agreeing thereto by the acceptance hereof, this company shall not be held to have waived any provisions or conditions of this policy, or caused any forfeiture thereof by any requirements, act or proceeding on its part relating to the appraisal or to any examination herein provided for."  *  *  *

"This policy is made by the Merchants' National Insurance Company and accepted by the assured, subject to all the foregoing stipulations and conditions, and each agrees to be bound by them; and no officer, agent or other representative of this company shall have power to waive any provisions or conditions of this policy, except such as by the terms of this policy may be the subject of agreement indorsed hereon or added hereto, and as to such provisions and conditions, no officer, agent or other representatives of this company shall have such power or be deemed or held to have waived such provisions or conditions, unless such

waiver, if any, shall be written upon or attached thereto, nor shall any privilege or permissions affecting the insurance under this policy exist or be claimed by the insured unless so written or attached."

The declaration after the usual averments alleges that after the notice of the loss, an adjustment was made by one B. T. Wise, special agent and adjuster for the Phoenix Insurance Company, who was then and there empowered by appellant to make an adjustment under the policy; that by such adjustment the claim of appellees was fixed at $2,296.66, as the amount, if any, appellees were entitled to recover; that by the adjustment and examination of Dunbar, one of the plaintiffs, and other facts averred, proofs of loss were waived, and the adjustment accepted in lieu of said proofs.

The general issue was pleaded and joinder by plaintiffs.

Special pleas, demurrers, replications, demurrers thereto, rejoinders, demurrers thereto, and withdrawals of pleadings in confusing numbers and qualities were filed. Without tracing a way through this labyrinth of pleadings, the following analysis will sufficiently present the issues in the case and the pleadings as settled by the court.

The issues of fact tried are shown by the following extract from the record :

" Issues being joined herein on the plea of general issue, and the amended second plea, and the first rejoinder to part of the plaintiff's replication to defendant's fourth plea, let a jury come," etc.

In order that the issues of fact presented by the special pleas may be understood, the pleadings leading up thereto are set out as follows :

Amended second plea:

" The assured under this policy agrees to keep a set of books showing a complete record of business transacted, including all purchases and sales both for cash and for credit (cash sales need not be itemized except by daily total), and agrees to take an itemized inventory of stock on hand at least once every year, and to keep such books and inventories securely locked at night in a fire-proof safe, and at all other times when the store described in this policy is not actually open for business, or in some secure place not

exposed to fire which may damage or destroy the building where said business is carried on; and in case of loss, whether at the time of the fire the store is open for business or not, the assured agrees to produce such books and inventories and in an event of failure to produce the same, this policy shall be null and void, and no suit or action at law shall be maintained thereon for any loss or claim.

And the defendant avers that the said plaintiffs failed and neglected to keep a set of books showing the complete record of business transacted, including all purchases and sales, both cash and credit, as by the conditions aforesaid plaintiffs were bound to do, by means of which failure the said policy became void, and no suit could be maintained on it," etc.

To this amended plea issue was joined. By an inspection of the plea, it will be seen that the issue of fact presented is as to whether appellees kept a set of books of the character set out in the plea. The amended fourth plea is in substance as follows:

"The assured under this policy agrees to keep a set of books showing a complete record of business transacted, including all purchases and sales, both for cash and for credit (cash sales need not be itemized except by daily totals), and agrees to take an itemized inventory of stock on hand at least once every year, and to keep such books and inventories securely locked at night in a fire-proof safe and at all other times when the store described in this policy is not actually open for business, or in some secure place not exposed to fire which may damage or destroy the building where said business is carried on; and in cases of loss, whether at the time of fire the store be open for business or not, the assured agrees to produce such books and inventories, and in event of failure to produce the same, this policy shall be null and void, and no suit or action at law shall be maintained thereon for any loss or claim.

"And the said defendant avers that the said plaintiffs failed and neglected to keep said books and inventories securely locked at night in a fire-proof safe, and at all other times when the store described in this policy was not actually open for business, or in some secure place which was not exposed to fire which might damage or destroy the buildings where said business was carried on, as by the conditions of the said policy they were bound to do; and by which said failure and neglect on the part of the said plaintiffs,

said policy then and there became wholly void, and no action at law could or can be maintained thereon," etc.

Concluding with a verification.

Replication to amended fourth plea:

"And as to the amended fourth plea by the defendants above pleaded, the plaintiffs say *precludi non*, because they say they did keep and perform all the conditions in said plea set forth, except they did not, at the time of said loss and damage, have and keep in said fire-proof safe, one certain book containing a partial inventory of their said stock; and as to said book, they say it was on the night of said fire, accidentally and without fraud or design on the part of the plaintiffs, left out of said safe and destroyed by said fire; and that the keeping of said book was waived by the said defendant, by one B. T. Wise, its adjuster, who was its agent for the purpose of making such waiver, and was waived by said company thereafter, for a valuable consideration to it paid by the plaintiffs; and this the plaintiffs are ready to verify. Wherefore they pray judgment," etc.

The rejoinder No. 1 to a part of this replication, upon which issue was joined, is as follows:

"And the said defendant, as to the replication of the plaintiffs, filed October 20th, to the fourth plea of the defendant, comes and says that the said plaintiffs ought not to have their aforesaid action as to so much of said replication as is set forth in the words and figures following, to wit: 'and was waived by said company thereafter, for a valuable consideration to it paid by the plaintiffs.' Because the said defendant says that it did not waive the keeping of said books described in said replication for a valuable consideration paid to it by the plaintiffs, as by the said part of said replication is alleged; and of this the said defendant puts itself upon the country," etc.

Demurrers were sustained to certain rejoinders to replications to other pleas. They are noticed as follows:

The third plea is to the effect that the assured agreed to take an itemized inventory of stock once every year, etc., and that plaintiffs failed and neglected to do so, by means of which failure the said policy became void and no action could be maintained, etc. To this plea plaintiffs replied that they made an inventory of their stock and kept the same in all respects as required except as to one book con-

taining a partial inventory, which said book was accidentally, and without the knowledge of plaintiffs, left out of their fire-proof safe on the occasion of the fire, and was then accidentally destroyed; that after said fire, and with the knowledge of defendant of the loss of said book, the keeping of said book was waived, by one B. T. Wise, the agent of defendant. To this replication defendant filed two rejoinders, the first being to the effect that, by the terms of the policy, no agent had power to waive any condition except in writing, upon or attached to the policy, and that such waiver was not made; second, that defendant furnished a blank to plaintiffs upon which to make out proofs of loss, which blank contained a statement that in consideration of the furnishing of the blank and its filling out by an adjuster, that the assured should not claim any waiver of the conditionsof thepolicy, except in writing, which blank, after being filled out, was sworn to by plaintiffs, by which they reaffirmed the conditions of the policy, and that there was no waiver in writing.

To these rejoinders plaintiffs demurred; the demurrer was sustained and defendant abided by its demurrer.

The fourth plea is the same in substance as the third, and the replication is similar, except that it avers in addition that " the keeping of said book was waived by the defendant, by one B. T. Wise, its adjuster, who was agent for the purpose of making such waiver, and was waived by said company thereafter for a valuable consideration," etc.

To this replication defendant rejoined, first, that it did not for a valuable consideration waive the keeping of said books, as plaintiffs alleged, concluding to the country.

To this plaintiffs joined issue, as before stated.

The second rejoinder to replication to fourth plea affirms the conditions of the policy as to waiver, and avers that there was no waiver in writing by B. T. Wise or any other agent of the company, nor was there any writing indorsed or attached to the policy authorizing Wise to make any waiver.

To this rejoinder a demurrer was sustained and defendant stood by its rejoinder.

A third rejoinder set up the furnishing of a blank upon which to make up proofs of loss, and that it contained a re-affirmation of the terms of the policy, and an agreement not to claim a waiver of its conditions, and that it was signed and sworn to by plaintiffs, etc. To which a demurrer was sustained, and defendant abided by its rejoinder.

The fifth plea set up the condition of the policy as to books and an inventory, and as to keeping them in some place secure as against fire, and the agreement, in case of loss, to produce said books, and avers that, in case of failure to comply with these conditions, the policy is null and void, etc.

The replication to fifth plea was that plaintiffs did keep books etc., and did produce them, except one, which had been accidentally, and without fraud, destroyed, and that the production of this book was waived by defendant.

Defendant rejoined, first, that no agent had power to waive conditions or be deemed to have waived them except such waiver is in writing, attached to the policy, and that there was no such waiver in writing, written on or attached to the policy by B. T. Wise or any agent of the company, etc.

Demurrer to rejoinder sustained and rejoinder abided by.

C. H. PATTON, attorney for appellant.

WATSON, LEONARD & GILBERT, attorneys for appellees.

MR. JUSTICE WORTHINGTON delivered the opinion of the court.

Counsel for appellant, in their brief say :

" Appellant defends upon the ground, briefly stated, that the conditions of the policy requiring (1st) the keeping of set of books showing a complete history of their business: (2d) the taking and keeping of inventories, and the keeping of said books and inventories in a fire-proof safe; (3d) the production of such books and inventories for inspection after a loss, are reasonable provisions, and conditions precedent, to be shown by plaintiffs in order to a recovery."

Appellees contend substantially (1st) that the above conditions were waived by appellant by the making of the " adjustment;" (2d) that they are excused from the consequences of not keeping the inventory book in the iron safe and not producing it at the time of the adjustment, because such a default was not intentionally or fraudulently committed.

The issues of fact as made by the general issue, the second amended plea, and the first rejoinder to part of plaintiff's replication to defendant's fourth plea, substantially present the controlling questions in the case, as stated in the extract from the brief of counsel for appellant above quoted. The policy of insurance, with proofs of loss, was introduced by plaintiffs. This made a *prima facie* case. Continental Life Ins. Co. v. Rogers, 119 Ill. 485.

The amount of the recovery, $2,310.66, does not exceed three-fourths of the loss, and is not disputed, if plaintiffs are entitled to any recovery at all.

The defense called witnesses, officers and employes of appellant, to testify as to what was said by appellee Dunbar in an examination under oath, at the office of appellant in Chicago. This evidence is in material points contradicted by Dunbar, and by Gibbons, an attorney for the assignees of the claim. The examination of Dunbar, at Chicago, was directed to ascertaining what books were kept by appellees and where kept. Both Dunbar and Wade testified upon this issue before the jury. Without referring to the evidence in detail, we think the jury was warranted in finding that appellees kept a blotter, or day book (Ex. F, in evidence), a ledger, and an inventory of what is referred to as the Mitchell stock, which stock was in the store when the policy was delivered, invoiced at $3,300, and that these books were in the safe when the fire occurred, and were submitted to adjuster Wise, who was present when the safe was opened. It also appears from the evidence that an invoice of the stock other than the Mitchell stock was taken directly after the delivery of the policy. The book containing this invoice, a book similar to the book marked exhibit F, was not in the safe at the time of the fire and was burned

or lost. There is no allegation in any pleading of appellant, that it was fraudulently or willfully left out of the safe, or that it was fraudulently or willfully lost or mislaid. Neither is there any evidence of fraud or willfulness. Both Wade and Dunbar testify that they do not know how it happened that this invoice book was left out, and that it was not done by design or intention. It is further in evidence that the totals of the invoice of both the Mitchell stock and the remainder of the stock were entered from the invoice book in the ledger. It is also in evidence that one Albert Fairfield, after the fire, made an examination of the books of appellees in the interest of appellant, and received from appellees the day book, Exhibit F, which afterward appeared in Chicago in the possession of appellant; that after the investigation and examination of the books and of the figures made by Wise, Fairfield said he was satisfied; that Wise, the adjuster, saw the blotter, ledger and invoice of the Mitchell stock, and was told of the loss of the invoice book containing the inventory of the other stock made directly after the issuance of the policy. It is also in evidence that no cash book was kept, but that cash sales were entered in the ledger as "daily sales," and that the firm's account with the bank was kept in the ledger. The blotter, or day book, was in the possession of appellant at the time of the examination of Dunbar in Chicago, and the ledger offered for examination, and money advanced by appellees to pay the expense of an agent of appellant to Ina, where the ledger was kept, if it desired to inspect it. Wise, appellant's agent, and who acted as adjuster, after the examination of the books, and after being told of the loss of the invoice book, said he was satisfied, and after coming back again to make further examination for appellant, again said he was satisfied. It is also in evidence that W. R. Burton, the agent of appellant who effected the insurance, saw the stock of goods when the policy was executed and delivered on the 6th of August, and that the Mitchell stock was in the store when the policy was issued.

Considering all the evidence in the case, we can not say

that the jury erred in finding for plaintiffs on the general issue, and on the issue presented in the second amended plea. The policy did not require that an inventory of the stock of goods should be made at once, and kept in the safe. The language of the policy is, " and agrees to take an itemized inventory of the stock on hand at least once every year, and to keep such books and inventory securely locked at night in a fire-proof safe." It was sufficient under this clause if the inventory was made within a year. In Niagara Fire Ins. Co. v. Forehand, 58 Ill. App. 163, where a similar clause in the policy was considered, no books were kept.

The judgment of the Appellate Court was reversed in N. F. Ins. Co. v. Forehand, 169 Ill. 628. In this latter case it was held that a plea alleging a failure to keep books of account and to keep them in a fire-proof safe with intent to defraud the insurer, was a good plea, and that a demurrer to such plea was erroneously overruled. The court, in its opinion, says :

" The provision was a reasonable one, and appellee having contracted by his policy of insurance to observe it, it was such a provision as was necessary to be fulfilled by him, and the failure to do so, with an intent to defraud the insurance company, would result in the forfeiture of his contract of insurance."

In the case at bar, the ledger was posted from the blotter which contained the credit sales. The cash sales, as testified by Wade, were entered in the ledger as " daily sales." The bank account was kept in the ledger. There is nothing in the evidence to show that other goods were bought between the 6th and 24th of August, unless it may be inferred from the testimony of Wade that " there were some bills of goods run on there (the ledger) and put underneath our inventory; " nor any evidence that goods were sold other than those charged in the blotter and those embraced in " daily sales." The book left out of the safe, according to the evidence, was similar to Exhibit F, which is made a part of the bill of exceptions—and is before us—a paperbound book, about twelve inches long and seven inches wide, containing 133 pages; such a book might be

easily overlooked and thereby unintentionally left out of the safe.

There being no allegations of an intent to defraud in the case at bar, and no evidence tending to sustain such an intent, and the evidence, as we think, showing a substantial compliance with the requirement to keep books of account, it can not be said that the verdict of the jury on the general issue and the issue of the second amended plea, is not supported by the evidence. If this conclusion is correct, the issue presented by the rejoinder to a part of plaintiff's replication to the fourth plea, is an immaterial issue, since, in such case, a waiver was not necessary to plaintiff's recovery.

The claim that appellees failed or refused to present their books for examination, except as to the book containing a part of the invoice, which was lost, is not supported by the evidence. The books were examined by both Fairfield and Wise, appellant's agents, and the blotter was in the possession of appellant. The evidence further shows that Dunbar advanced $14 to appellant to pay the expense of coming to Ina to examine the ledger, and that appellant retained the money, but did not come and make the examination.

The question of law presented by overruling demurrers to rejoinders of appellant as to waiver not being in writing, we deem unnecessary to decide, as, in our view, appellees are entitled to recover without reference to any waiver. Nor was there reversible error under the facts in the case in sustaining demurrers to rejoinders to replications alleging that the failure to keep books, etc., in a fire-proof safe, there being no allegation of willfulness or fraudulent intent, and the replications showing a compliance with the condition, except as to a part of the inventory, and that this exception was not willfully or fraudulently made.

We are not prepared to say that the accidental omission to put a small paperbound book in the safe, containing a part of an invoice, whose total is carried to the ledger, and when the stock of goods insured had been seen only

eighteen days before by the agent effecting an insurance, is such a breach of a condition in an insurance policy as will forfeit the insurance.

Judgment of the Circuit Court is affirmed.